IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN PIEROG, | |
| Plaintiff, | 2:19-cv-607 |
| vs. | Judge Marilyn J. Horan |
| CHAD F. WOLF, *Acting Secretary of the Department of Homeland Security (Transportation Security Administration)*, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Brian Pierog filed a Complaint on May 23, 2019, and then filed the present Amended Complaint on October 4, 2019, alleging claims of discrimination and retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. (ECF Nos. 1, 11). Defendant Kevin McAleenan, who has been sued in his official capacity as Acting Secretary of the Department of Homeland Security, moved to dismiss the Amended Complaint, or in the alternative, sought summary judgment in his favor, on November 8, 2019. (ECF No. 14). On November 13, 2019, Chad F. Wolf succeeded Mr. McAleenan as Acting Secretary, and the Court later ordered a substitution of party in accordance with Fed. R. Civ. P. 25(d). (ECF No. 22). The parties have briefed the issues, (ECF Nos. 15, 18, 21), and the Motion is now ripe for decision. For the following reasons, the Motion will be granted in part and denied in part.

**I. Background**

The Federal Air Marshal Service is a component of the Transportation Security Administration (TSA), which itself is an agency in the Department of Homeland Security. (ECF

1

No. 11, at ¶ 4). Plaintiff Brian Pierog was employed as a Senior Federal Air Marshal at the Pittsburgh Field Office. *Id.* at ¶¶ 3–4. In or around 2014, the TSA decided to close six field offices, including the Pittsburgh Field Office. *Id.* at ¶ 7. In June 2014, Mr. Pierog filed an EEOC complaint alleging age discrimination against the TSA, specifically alleging that the TSA decided to close those six field offices because they had the highest percentages of older Federal Air Marshals. *Id.* at ¶¶ 7–8. Mr. Pierog's EEOC charge was combined with other like charges in a class action lawsuit in the United States District Court for the Northern District of California. *Id.* at ¶ 7. Mr. Pierog was a named plaintiff in that matter, where he "was active and vocal in objecting to TSA's effort to close the six Field Offices and instrumental in organizing the class action against Defendant." *Id.* at ¶ 9. Mr. Pierog thus alleges that "TSA management was aware of [his] activities with respect to the EEOC charges." *Id.* at ¶ 10.

About three months after filing the EEOC complaint, on September 12, 2014, Mr. Pierog injured his right knee while running for physical training near his temporary duty lodging in California. *Id.* at ¶ 11; (ECF No. 1-2, at 2). He sustained a torn anterior cruciate ligament (commonly known as the ACL) and a torn medial meniscus. (ECF No. 11, at ¶ 11). Mr. Pierog sought workers' compensation benefits by submitting a Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation, known as a Form CA-1. *Id.* at ¶ 12. However, the second page of the Form CA-1, putatively completed by Supervisor James Morelli, stated that Mr. Pierog was not injured in the performance of his duties because he "left the grounds of his temporary duty location to go for run" rather than using the on-site physical fitness center. *Id.* at ¶ 13; (ECF No. 1-2, at 3–4).

Supervisor Morelli subsequently informed Mr. Pierog that he "did not provide those comments" and was "pretty upset that someone would change that section of the form when [his]

2

name was on it." (ECF No. 11, at ¶ 14; ECF No. 1-3, at 2). As a result of the statements on the altered Form CA-1, Mr. Pierog received an Authorization for Examination and/or Treatment form, known as a Form CA-16, denying him authorization for medical treatment. (ECF No. 11. at ¶¶ 15–16). Supervisor Karnel McMahan, despite signing the Form CA-16, disagreed with the decision to deny benefits to Mr. Pierog. *Id.* at ¶ 15. Supervisor McMahan attached a statement to the Form CA-16 explaining that he answered the relevant questions "under duress and guidance from Dave Wichterman (Program Manager) and Daniel Waterstreet (Human Resources Specialist)." (ECF No. 1-4, at 2). He further stated that he believed Mr. Pierog's injury occurred in the course of performance of his duties and he quoted Federal Air Marshal Service guidance to support his position. *Id.* Mr. Pierog requested an investigation into the matter. (ECF No. 11, at ¶ 18). Through that investigation, "it was determined that TSA Human Resources Specialist, Daniel Waterstreet, falsified the Form CA-1, and TSA Program Manager, Dave Wichterman, along with Daniel Waterstreet forced Supervisor McMahan to sign the Form CA-16 denying medical treatment." *Id.* On February 11, 2015, Mr. Pierog filed a second EEOC complaint. *Id.* at ¶ 21. In that complaint, Mr. Pierog alleged that the TSA "discriminated against him and subjected [him] to hostile work environment harassment based on disability, age, and reprisal for prior protected EEO activity" when it denied him workers' compensation benefits. *Id.*

Mr. Pierog's workers' compensation claim was later approved in April 2015. *Id.* at ¶ 19. Mr. Pierog alleges that due to the delay in receiving necessary surgery on his right knee, he "overcompensated and suffered an injury to his left knee." *Id.* at ¶ 17. The delayed treatment ultimately caused Mr. Pierog "to become totally disabled as a Federal Air Marshal, requiring him to take a disability retirement." *Id.* at ¶ 20.

Later, in 2018, the parties involved in the class action lawsuit in the Northern District of California, including Mr. Pierog, entered into a Settlement Agreement. (ECF No. 15-1). The Settlement Agreement contained the following release:

> 2. **Release.** In consideration of the Separated Employee Settlement Payment and . . . other terms set forth in this Agreement, Plaintiffs hereby release and forever discharge Defendant Secretary of the Department of Homeland Security, and any and all of her past and present officials, agents, employees, components, departments, attorneys, insurers, and their successors and assigns, including the Federal Air Marshal Service, the Transportation Security Administration, and the Department of Homeland Security, from any and all obligations, damages, liabilities, actions, causes of actions, claims and demand of any kind and nature whatsoever, including claims arising under the Age Discrimination in Employment Act, 29 U.S.C. § 633a, whether suspected or unsuspected, at law or in equity, known or unknown, or omitted prior to the date he executes this Agreement, which arise from or relate to each Plaintiff's employment with Defendant and/or the Federal Air Marshal Service.
> Without otherwise limiting the foregoing, this Release shall not apply to bar claims which have been raised in the pending matters of *Casaretti, etc. v. United States*, United States Court of Federal Claims, Case No. 15-294C; *Donald Martin Jr., et al v. United States*, United States Court of Federal Claims, Case No. 13-834C; and the following, individual pending matters unrelated to the office closure order:
> . . .
> Brian Pierog, HS-TSA-02403-2015, EEOC
> . . . .

*Id.* at 4–5. The court denied approval of the settlement because the release was too broad. *K.H. v. Sec'y of the Dep't of Homeland Sec.*, 2018 U.S. Dist. LEXIS 125459 (N.D. Cal. July 26, 2018). Specifically, the court concluded that the scope of the release went "far beyond the ADEA claims at issue." *Id.* at *11. The parties then agreed to the following Addendum to the Settlement Agreement:

> . . . Defendant agrees that the scope of the claims released in Paragraph 2 of the Settlement Agreement shall be limited to such obligations, damages, liabilities, actions, causes of actions, claims and demands arising out of the allegations in the Second Amended Complaint regarding the Federal Air Marshal Service's decision to close six of its offices and to offer transfers to impacted Federal Air Marshals, including allegations of age discrimination as prohibited by the Age Discrimination in Employment Act, 29 U.S.C. § 633a, constructive discharge, and retaliation.

4

(ECF No. 15-1, at 12–14). On December 17, 2018, the court approved the Settlement Agreement and Addendum. *K.H. v. Sec'y of the Dep't of Homeland Sec.*, 2018 U.S. Dist. LEXIS 212125 (N.D. Cal. Dec. 17, 2018). The parties subsequently stipulated to the dismissal of the case. (ECF No. 15-7).

On February 27, 2019, the EEOC issued its decision in Mr. Pierog's second EEOC complaint. (ECF No. 11, at ¶ 22). Mr. Pierog thereafter brought the present action in which he alleges that, "[b]ut for Plaintiff's age and protected activity, he would not have been singled out for arbitrary denial of medical treatment." *Id.* at ¶ 25. Defendant Chad F. Wolf, the Acting Secretary of the Department of Homeland Security, moves to dismiss the Amended Complaint, arguing that the release in the Settlement Agreement bars this action. (ECF No. 15, at 1). Secretary Wolf additionally argues that Mr. Pierog fails to state a claim for which relief may be granted. *Id.* at 3. In further support of his position, Secretary Wolf offers affidavits and other exhibits, and asks the Court to convert the Motion to Dismiss to a Motion for Summary Judgment and enter judgment in Secretary Wolf's favor. *Id.* at 2, 22.

## II. Legal standards

In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted). The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it is facially plausible, meaning that the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

Furthermore, in evaluating a motion to dismiss, "'courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Courts "may also consider evidence integral to or explicitly relied upon" by the complaint. *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). However, if other matters "are presented to and not excluded by the court," Rule 12(d) requires that the motion to dismiss be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). When such outside matters are considered, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Thus, the court must give the parties "'notice of its intention to convert the motion and allow[] an opportunity to submit materials admissible in a summary judgment proceeding or allow[] a hearing.'" *Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 (3d Cir. 2016) (quoting *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989)).

**III. Discussion**

A. Whether the settlement agreement bars Mr. Pierog's claims

Secretary Wolf primarily seeks dismissal of Mr. Pierog's Amended Complaint on the basis that, in the course of settling the class action in the Northern District of California, Mr. Pierog signed a release barring the present matter. (ECF No. 15, at 1). Mr. Pierog disagrees

6

with Secretary Wolf's interpretation of the release. (ECF No. 18, at 2). Mr. Pierog also argues that the settlement agreement should not be considered by the Court at this stage of the proceedings. *Id.*

As an initial matter, Mr. Pierog's contention that the affirmative defense of release "must be plead[ed] in the Answer" because "Rule 12(b) does not permit it to be raised by motion," (ECF No. 18, at 15), is unavailing. In *Witasick v. Minnesota Mutual Life Insurance Company*, the Third Circuit responded to this very argument by holding, "We are unpersuaded. Courts regularly take settlement agreements into consideration when dismissing complaints." *Witasick v. Minn. Mut. Life Ins. Co.*, 803 F.3d 184, 192 (3d Cir. 2015). This Court may therefore properly consider the Settlement Agreement at this time.

The Court now turns to the merits of Secretary Wolf's position that the language of the release bars the claims in Mr. Pierog's Amended Complaint. Settlement agreements are contracts, and as such, the general rules of contract interpretation apply to them.[1] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 282 n.50 (3d Cir. 2014). Fundamental to a court's interpretation of a contract is that the court should "'ascertain and give effect to the intention of the parties.'" *Id.* (quoting *Miller v. Ginsberg*, 874 A.2d 93, 99 (Pa. Super. Ct. 2005)). The court must therefore "'adopt an interpretation which, under all circumstances, ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished.'" *Id.* (quoting *Miller*, 874 A.2d at 99).

---

[1] Secretary Wolf points out, and Mr. Pierog does not dispute, that the Settlement Agreement does not contain an express choice-of-law provision. (ECF No. 15, at 11–12; ECF No. 18, at 16–17). Secretary Wolf also states, and Mr. Pierog likewise does not dispute, that it does not appear that there are relevant differences between Pennsylvania law and the law of any other potentially applicable jurisdiction. (ECF No. 15, at 11–12; ECF No. 18, at 16–17). Accordingly, the Court will apply Pennsylvania law for the purposes of this Motion.

7

Here, the Addendum to the Settlement Agreement states that the class members agreed to release claims "arising out of the allegations in the [class action complaint] regarding the Federal Air Marshal Service's decision to close six of its offices and to offer transfers to impacted Federal Air Marshals, including allegations of age discrimination as prohibited by the Age Discrimination in Employment Act, 29 U.S.C. § 633a, constructive discharge, and retaliation." (ECF No. 15-1, at 14). A portion of the release that was not altered by the Addendum provided that specific claims were not subject to the release. *Id.* at 4–5. The list of specific carve-outs included Mr. Pierog's second EEOC complaint. *Id.*

Secretary Wolf first argues that Mr. Pierog's second EEOC charge "relates to the same set of allegations of age discrimination and retaliation in connection with the 2014 office closure order," and is therefore barred by the release. (ECF No. 15, at 11). However, the two EEOC complaints do not, in fact, "relate" to the same set of allegations. Mr. Pierog's first EEOC complaint and subsequent class action relate to the 2014 office closure, but the allegations in Mr. Pierog's second EEOC complaint relate to the denial of workers' compensation benefits. Moreover, Secretary Wolf ignores that there are two parts to Mr. Pierog's second EEOC complaint, as alleged in the present Amended Complaint. Presently, Mr. Pierog alleges that he was denied benefits due to age discrimination *and* as retaliation for his participation in the first EEOC complaint. While the retaliation component arguably "aris[es] out of" the allegations in the first EEOC complaint, such that it would be barred by the release (but for the carve-out, which is discussed next), the claim that Mr. Pierog was denied benefits due to age discrimination is an entirely new claim, unrelated to the 2014 office closure. In short, Secretary Wolf conflates the two alleged discriminatory events and seeks to apply the general release language too broadly.

Secretary Wolf next argues, "The carve out makes it clear that Mr. Pierog was aware of his second EEO complaint, and that he voluntarily yielded up any such claims arising from it that were related to the office closure order." (ECF No. 15, at 13). Secretary Wolf, however, misunderstands the plain language and the purpose of the release carve-outs. The purpose of the carve-out, by its very nature, is to list specific claims which the parties agree should not be subject to the preceding release language—that is, the parties agree to *carve* specific claims *out* of the body of claims that are being released. The purpose is not, as Secretary Wolf argues, to name claims that are subject to the release.

In summary, contrary to Mr. Pierog's position, it is proper for the Court to consider the release found in the Settlement Agreement at this stage of the proceedings. However, contrary to Secretary Wolf's position, the language in the release specifically carves out Mr. Pierog's second EEOC complaint, such that the release does not bar this action. Thus, Secretary Wolf's Motion will be denied as to this issue.

B. Whether Mr. Pierog fails to state a claim

Secretary Wolf argues, in the alternative, that the Amended Complaint nonetheless fails to state claims for age discrimination and retaliation under the ADEA. Secretary Wolf also offers outside evidence in support of his position, and asks that the Court convert the Motion to Dismiss to a Motion for Summary Judgment. However, the evidence Secretary Wolf offers— affidavits from Human Resources Specialist Waterstreet and Program Manager Wichterman—is not appropriate for the Court to consider at this time. Mr. Pierog has not had the opportunity to engage in discovery regarding the details, credibility, and veracity of Waterstreet's and Wichterman's statements. Accordingly, the Court denies Secretary Wolf's request to convert the

Motion to Dismiss to a Motion for Summary Judgment, and the Court will address Mr. Pierog's claims under the Rule 12(b)(6) standard.

   *i. ADEA discrimination*

The ADEA prohibits employers from, among other things, "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In a claim for disparate treatment under the ADEA, the plaintiff must show that his age "actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141 (2000) (internal quotations omitted) (cleaned up). In other words, the plaintiff must show that his age was the but-for cause of the adverse employment action. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177 (2009).

Where a plaintiff relies on circumstantial evidence to establish age discrimination, the plaintiff must plead the relevant elements under the *McDonnell Douglas* burden-shifting framework. *Fiorentini v. William Penn Sch. Dist.*, 665 Fed. App'x. 229, 233–34 (3d Cir. 2016). A plaintiff therefore must plead facts showing that he "(1) is 40 years of age or older; (2) was qualified for the position [or benefit] in question; (3) was subject to an adverse employment action despite being qualified; and (4) was subject to the adverse action under circumstances that raise an inference of discrimination." *Id.* at 233. A circumstance that raises such an inference, for example, is that "similarly situated employees outside of the protected class were not similarly treated." *Id.* at 233–34.

Secretary Wolf concedes that Mr. Pierog "was over 40 at the time he sought workers' compensation benefits, and for purposes of this argument only, also concedes that he was entitled to workers' compensation benefits." (ECF No. 15, at 20). Secretary Wolf further concedes "that

10

denial or delay in those benefits is an adverse personnel action." *Id.* The only issue, then, is whether Mr. Pierog's age was the but-for cause of the adverse action. *Id.* at 17. A review of the Amended Complaint shows that Mr. Pierog alleges only that "the TSA's actions with respect to Plaintiff were designed to end Plaintiff's career as a [Federal Air Marshal] because of his age," and that his age was a "but-for" cause of his denial of medical treatment. (ECF No. 11, at ¶¶ 24–25). Mr. Pierog does not, however, allege any facts or circumstances that support an inference of age discrimination. For example, Mr. Pierog does not offer any allegation that similarly situated, younger employees were not similarly treated. And, although Mr. Pierog's allegations regarding the falsified form indicate that certain decisionmakers held an animus toward him, Mr. Pierog does not allege facts supporting his conclusion that this animus was because of his age. Mr. Pierog therefore fails to state a claim for age discrimination under the ADEA, and Secretary Wolf's Motion will be granted as to this issue.

*ii. ADEA retaliation*

The ADEA also prohibits employers from retaliating against employees who engage in protected activity, such as opposing an employer's discriminatory practice or participating in litigation under the ADEA. 29 U.S.C. § 623(d). To establish a retaliation claim under the ADEA, a plaintiff must show that "(1) he engaged in 'protected employee activity,' (2) that he was 'subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity,' and (3) that there was a causal connection between the protected activity and the adverse action." *Fawole v. Newark Beth Isr. Hosp.*, 755 Fed. App'x. 143, 146 (3d Cir. 2019) (quoting *Fasold v. Justice,* 409 F.3d 178, 188 (3d Cir. 2005)).

For the purposes of this Motion, Secretary Wolf concedes that Mr. Pierog "engaged in protected conduct in June 2014 when he participated in the EEO process regarding the closure of

11

his field office." (ECF No. 15, at 21). Secretary Wolf also concedes "that the delay in [Mr. Pierog's] receipt of workers' compensation benefits was an adverse employment action." *Id.* Secretary Wolf argues, however, that Mr. Pierog's retaliation claim fails on the causation element. *Id.* at 17, 21. Specifically, Secretary Wolf contends that the three months that passed between Mr. Pierog's filing of the first EEOC complaint and the improper denial of his workers' compensation request is not "unusually suggestive" enough to establish causation on its own. *Id.* at 17. However, Secretary Wolf ignores the ongoing nature of Mr. Pierog's protected activity. Although Mr. Pierog filed first EEOC complaint in June 2014, the matter was not settled until December 2018. Moreover, Mr. Pierog alleges that he "was active and vocal in objecting to TSA's effort to close the six Field Offices and instrumental in organizing the class action against Secretary Wolf," indicating protected activity beyond the day he filed his first EEOC complaint. (ECF No. 11, at ¶ 9). Secretary Wolf also glosses over the circumstances surrounding the adverse employment action. Mr. Pierog was not simply denied benefits, which Secretary Wolf concedes is an adverse action. Rather, Mr. Pierog's denial was the result of a falsified form and a form signed under duress. *Id.* at ¶¶ 14–16, 18. These circumstances, assumed to be true at this stage of the proceedings, are indicia of animus toward Mr. Pierog. Thus, the ongoing nature of Mr. Pierog's protected activity and the circumstances surrounding the denial of Mr. Pierog's workers' compensation benefits, taken together, are sufficient to show causation. Accordingly, Secretary Wolf's Motion to Dismiss will be denied as to Mr. Pierog's retaliation claim.

**IV. Conclusion**

THEREFORE, based on the foregoing, Defendant's Motion to Dismiss for failure to state a claim is GRANTED as to Plaintiff's ADEA age discrimination claim, but DENIED as to

Plaintiff's ADEA retaliation claim. Likewise, Defendant's Motion to Convert to Motion for Summary Judgment is also DENIED.

IT IS SO ORDERED.

DATE February 28, 2020

Marilyn J. Horan
United States District Judge